# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00313-COA

IN THE INTEREST OF K.B., A MINOR, A.D.B., A MINOR, S.D.B., A MINOR: A.B.B.　　　　APPELLANT

v.

E.B.S.　　　　APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/29/2024 |
| TRIAL JUDGE: | HON. MARCIE TANNER SOUTHERLAND |
| COURT FROM WHICH APPEALED: | WARREN COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | J. ALLEN DERIVAUX JR. |
| ATTORNEYS FOR APPELLEE: | MICHAEL R. BONNER |
| | TRAVIS T. VANCE JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 11/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.　On February 7, 2024, a termination of parental rights (TPR) hearing was held in the Youth Court of Warren County, Mississippi, concerning three minor children of A.B.B.[1] (mother) and W.S.B. (father). Aggrieved by the trial court's decision, A.B.B. appeals.

### FACTS AND PROCEDURAL HISTORY

¶2.　The couple married on November 19, 2010. During their marriage, they had three children: K.B. was born in May 2013, A.D.B. was born in December 2014, and S.D.B. was

---

[1] Initials are used for the parties in order to maintain confidentiality.

born in September 2016.[2]

¶3.    Lawrence County Child Protection Services (LCCPS) received a complaint on September 27, 2021, alleging that the three minor children were not enrolled in school, were neglected, and lived in a dirty home with no food and that the mother was using drugs in their presence. Additionally, the mother was allegedly sleeping with random men for drug money, and the children's maternal grandmother, with whom the children and the mother were living in Lawrence County, had recently overdosed. Following an investigation by LCCPS, the children were removed from the home.[3] Their father was unable to be located.

¶4.    A shelter hearing was held on November 3, 2021. At that time, the mother tested positive for amphetamines, opiates, hydrocodone, and THC. The children were temporarily placed in the custody of their maternal uncle and his wife. On November 15, 2021, custody was awarded to E.B.S., a half-sister of the three children. An adjudication hearing followed on December 1, 2021. The three children were adjudicated as neglected, and visitation with the mother was suspended until she could provide a clean drug screen.

¶5.    The mother entered an inpatient drug rehabilitation program on December 3, 2021. While there, she attended parenting classes, received emotional therapy, treatment for post-

---

[2] The mother was previously married, and she and her former husband had two children. Mother traveled to Mexico to get a divorce on November 10, 2010. At the time of this TPR hearing, the mother's former husband had been awarded full custody of their two children. In his complaint, the mother's former husband alleged that there was abuse by the preacher's son taking place at the church cult compound where the mother and father were living with the children. The mother's former husband had also filed for divorce, as he was not aware of the Mexican divorce decree.

[3] A fourth child was also involved in the report to LCCPS. This child was also removed from the home and placed with his biological father.

traumatic stress disorder, and anger management. She completed treatment on January 2, 2022, and tested negative for all drugs on January 12, 2022. However, on March 2, 2022, she tested positive for amphetamines and THC.

¶6. In September 2022, the children's half-sister filed a motion to have the case transferred to Warren County, where she was then living with the three minor children. Her request was granted pursuant to an order dated September 28, 2022. On October 12, 2022, a permanency review hearing was held in Warren County Youth Court. During this hearing, the mother revealed that she had recently called the suicide hotline and had been treated by the Crisis Residential Center in Natchez, Mississippi. After the hearing, the court entered an order directing Warren County Child Protection Services to begin monitoring the children and working with the mother.

¶7. The court-appointed guardian ad litem (GAL) for the three children in Warren County reached out to the previous GAL from Lawrence County to get the background of the case. LCCPS reported instability in the mother's housing and employment, her failed drug screens, and the trouble they experienced trying to stay in touch with her due to changed phone numbers. Additionally, the mother refused to meet with LCCPS at her home. She only wanted to meet at her place of employment.

¶8. The mother was asked to submit a hair follicle test on December 9, 2022. Although she showed up to take the test, she did not have a driver's license, so the test could not be completed. A permanency review hearing was held on December 13, 2022. The mother submitted a urine screen that tested positive for THC and amphetamines.

3

¶9.    A family team meeting was held on April 28, 2023, at which the mother reported that she had a new job caring for a disabled person, along with employment at a chicken plant. She reported that she no longer saw a therapist. On June 6, 2023, another permanency review hearing was held to continue seeking reunification of the mother with her three children. The mother was ordered to seek counseling. The GAL reported that the three children had continuously stated that they did not wish to see their mother.

¶10.    The mother did not show up for drug screens on August 7, 2023, and August 29, 2023. She also refused to grant permission for CPS to retrieve her medical records and pharmacy records to verify her prescription use and medical treatment. On September 18, 2023, following another permanency review hearing, E.B.S. was granted durable legal custody of the children. The whereabouts of their father were still unknown, and he still had made no attempts to communicate with the children.[4]

¶11.    On November 27, 2023, a formal petition was filed in Warren County Youth Court for the termination of parental rights. The petition alleged that the mother had failed to exercise reasonable visitation with the children, failed to eliminate the behaviors such as drug use despite reasonable efforts made by CPS, and had failed to enter a plan for reunification with the children. The father was alleged to have deserted the children for a period of more than one year. E.B.S. had been providing care and support for the three children since November 15, 2021, and they were thriving in her custody.

¶12.    A written judgment terminating the parental rights of the mother and father was

---

[4] W.S.B. is also the biological father of E.B.S.

4

entered on February 29, 2024, following the February 7 hearing. On appeal, the mother contends that the trial court erred by not providing her notice of her rights at the beginning of the termination of parental rights hearing as required by Mississippi Code Annotated section 93-15-113(2)(a) (Rev. 2018).

## STANDARD OF REVIEW

¶13. In *M.A.S. v. Lamar County Department of Child Protection Services*, 353 So. 3d 460, 472 (¶30) (Miss. Ct. App. 2021), this Court stated:

> The appellate standard of review is the same for both youth court proceedings and chancery court proceedings. *In re J.P.*, 151 So. 3d 204, 208 (¶9) (Miss. 2014). "The county court's 'findings of fact concerning the termination of parental rights are viewed under the manifest error/substantial credible evidence standard of review.'" *C.S.H. v. Lowndes Cnty. Dept. of Human Servs.*, 246 So. 3d 908, 913 (¶21) (Miss. Ct. App. 2018) (quoting *W.A.S. v. A.L.G.*, 949 So. 2d 31, 34 (¶7) (Miss. 2007)). On appeal, this Court is tasked with determining "whether credible proof supports the county court's factual findings by clear and convincing evidence." *Id*. at 913-14 (¶21). However, questions of law are subject to de novo review, "and if a chancellor misapprehends the controlling rules of law or acts pursuant to a substantially erroneous view of the law, reversal is proper." *Chism v. Bright*, 152 So. 3d 318, 322 (¶12) (Miss. 2014).

## ANALYSIS

¶14. Mississippi Code Annotated section 93-15-113(2)(a) provides, that at the beginning of an involuntary termination of parental rights hearing, "[t]he court shall also explain to the parent: (i) The right to counsel; (ii) The right to remain silent; (iii) The right to subpoena witnesses; (iv) The right to confront and cross-examine witnesses; and (v) The right to appeal, including the right to a transcript of the proceedings." During the TPR hearing in this case, the mother was represented by a court-appointed attorney. The caseworker from CPS,

the court-appointed GAL, and E.B.S. were all called as witnesses. Each witness was cross-examined by the mother's counsel. The mother then testified on her own behalf, and the father failed to appear.

¶15. Following the testimony of all parties and witnesses, the youth court found by clear and convincing evidence that terminating the parental rights of both the mother and father would be in the best interest of the three children. The mother was then advised of her right to appeal.

¶16. Similarly, in *C.P. v. Lowndes County Department of Child Protection Services*, 349 So. 3d 1209 (Miss. Ct. App. 2022), the parents were represented by a court-appointed attorney throughout the proceedings. *Id*. at 1225 (¶48). The attorney cross-examined witnesses and called the father to testify. *Id*. Further, the attorney advised the court that the mother also wished to testify. *Id*. This Court reasoned that "any error created by the court's failure to explicitly inform the parents of their rights caused no harm to the parents under these facts." *Id*. This Court also recognized that "under different circumstances, the failure to explicitly inform parties of their essential and fundamental rights, as required by section 93-15-113(2)(a), could have harmful and prejudicial effects. *Id*.

¶17. However, in the case sub judice, the mother exercised all the rights that she now complains the court failed to give her. Because she was represented by counsel, fully took part in the TPR hearing, and was ultimately advised of her right to appeal, the mother suffered no harm from the court failing to explicitly inform her of her rights at the beginning of the TPR hearing.

**CONCLUSION**

¶18.    After reviewing the record, we find no error in the youth court's decision to terminate the mother A.B.B.'s parental rights. Therefore, the order dated February 29, 2024, is affirmed.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**